UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>　　　　　　　　　Plaintiff, <br>v. <br>VALERIAN CHIOCHIU, <br>　　　　　　　　　Defendant. | Case No. 2:17-cr-00306-JCM-PAL <br><br>**REPORT OF FINDINGS AND RECOMMENDATION** <br><br>(Mot Dismiss – ECF No. 473) |

Before the court is defendant Valerian Chiochiu's ("Chiochiu") Motion to Dismiss Indictment (ECF No. 473), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion, the government's Opposition (ECF No. 503), and the Motions for Joinder (ECF Nos. 483, 485) filed by Defendants Aldo Ymeraj and Marko Leopard.[1] No reply brief was filed and the deadline for doing so has expired.

## BACKGROUND

**I.　THE INFRAUD INDICTMENT**

Defendant Valerian Chiochiu (a.k.a. "Onassis," "Flager," "Socrate," and "Eclessiastes") and 34 co-defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment") returned January 30, 2018.[2] This case arises from allegations that Chiochiu and his co-defendants operated a criminal enterprise known as "Infraud" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Defendants

---

[1] Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions of his co-defendants to the extent any motion is applicable to him. The current motion presents a legal question of whether First Amendment protections apply the overt racketeering acts charged against Chiochiu. Wilson is not charged with similar acts; thus, the motion is not applicable to Wilson.

[2] A total of 36 defendants were named in the Infraud indictment. One defendant has been dismissed.

1

allegedly engaged in identity theft and financial fraud with racketeering acts that include money laundering, trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with these acts. ECF No. 303 at 6, ¶ 1.

Mr. Chiochiu is accused of being a member of Infraud who provided "guidance to other members on the development, deployment, and use of random access memory ("RAM") point-of-sale ("POS") malware as a means of harvesting stolen data." *Id.* at 17. He is charged in count one with RICO conspiracy in violation of 18 U.S.C. § 1962(d).[3] Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). *Id.* at 24, ¶ 12. With regard to overt racketeering acts, Chiochiu is accused as follows:

> 14.78    On or about April 23, 2013, **Chiochiu [12]** posted a Craigslist email-scraping PHP script on the Infraud Organization forum….
>
> 14.81    On or about May 14, 2013, **Chiochiu [12]** posted a link to download a RAM credit card skimmer to the Infraud Organization forum….
>
> 14.101   On or about September 9, 2014, **Chiochiu [12]** posted information on the Infraud Organization forum about how to make a RAM skimmer.

*Id.* at 34, 38.

**II.    THE MOTION TO DISMISS**

Chiochiu's motion (ECF No. 473) asks the court to dismiss all charges against him because his alleged conduct is protected by freedom of speech under the First Amendment. As a threshold matter, he argues that computer code is protected speech merely written in a computer programming language rather than a standard language. His alleged racketeering acts consist of posting computer code, programs, and commentary about the same. He claims the entirety of his

---

[3] Counts two through nine allege possession of 15 or more counterfeit and unauthorized access devises in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(I), along with 18 U.S.C. § 2. ECF No. 303 at 39–42.

2

alleged criminal conduct is speech that "relates to matters of scientific curiosity and public debate," *i.e.*, the development and use of so-called e-mail scraping scripts and credit card skimmers. *Id.* at 2. He claims his posts fall squarely within the First Amendment's protections because they are relevant to the computer science and software development communities for technical reasons and the general public "by potentially generating debate on the consequences of emerging technologies on identity protection and the appropriate governmental response thereto." *Id.* at 4.

Although e-mail scraping scripts and credit card skimmers can be used to commit crimes such as identity theft, Chiochiu maintains that a potential to encourage or facilitate crime does not remove First Amendment protections. His alleged conduct is seen as "dual use" speech, "meaning the speech in question has a lawful purpose - legitimate expressive activity - and an unlawful purpose - facilitating crime." *Id.* Citing *Brandenburg v. Ohio*, 395 U.S. 444 (1969), Chiochiu submits that concern for potential losses to private parties through credit card fraud cannot obviate the need to protect speech that does not incite *imminent* criminal acts. An allegation that Chiochiu knowingly, or even intentionally, promoted criminal activity by third-parties through his speech is insufficient to render his speech unprotected. He acknowledges that analysis of dual-use speech issues requires a fact-specific balancing of interests, but urges the court to resolve that balance in favor of First Amendment protection because the Infraud indictment alleges mere posting of computer code or linking to computer programs without incitement to commit fraud. Thus, to the extent the RICO statute criminalizes protected speech activity, it is overbroad as applied to him.

In its Response (ECF No. 503), the government argues the motion should be denied for three reasons: (1) posting malicious software (*i.e.*, "malware") in a criminal context is not protected speech within the meaning of the First Amendment; (2) even if malware is entitled to some degree of First Amendment protection, the government still may criminalize Chiochiu's conduct through RICO; and (3) Chiochiu's as-applied challenge is premature at this stage, and dismissal of the Infraud indictment is not the appropriate remedy for his claim.

With respect to its first argument, the government asserts that malware is fundamentally dissimilar to the type of expressive conduct the First Amendment protects. *Id.* at 4. The government points out that Chiochiu cites no cases in which any court has held in a criminal case

that malware or similar software is expressive conduct or speech. Although computer code may share certain qualities with speech and contain expressive features, the malware and e-mail scraping code Chiochiu allegedly used was purely functional and destructive, not expressive. "Malware does not communicate a message from one *person* to another, but operates solely by giving commands to a *computer*." *Id.* at 5. Malware is designed to accomplish a specific task through its commands. In this case, the malware was tasked with exfiltration of financial data for the purpose of committing fraud. Additionally, the cases Chiochiu cites do not hold that computer code is *always* protected. Rather, they hold that protected speech does not lose its protected status simply because it is expressed in computer code. Viewed as a whole, the allegations involving Chiochiu's racketeering acts do not demonstrate an intent to further academic or scientific inquiry, but to help other Infraud members make money through fraud. As such, Chiochiu's alleged conduct is not protected speech.

Second, even if Mr. Chiochiu's posting of malware contained elements of speech, the government may regulate that speech without violating the First Amendment. The government may criminalize speech that facilitates crime. *See*, *e.g.*, *United States v. Stevens*, 559 U.S. 460, 468 (2010) (explaining that "speech integral to criminal conduct" is one of the traditional First Amendment exceptions); *United States v. Varani*, 435 F.2d 758, 762 (6th Cir. 1970) ("[S]peech is not protected by the First Amendment when it is the very vehicle of the crime itself."). In addition, *Brandenburg*, which addresses "*advocacy* of illegal action – specifically, violent action," does not apply here because Chiochiu is not accused of advocating for others to break the law. Resp. at 9. He is accused of conspiring to conduct and participate in Infraud's affairs. The government maintains that "[b]y posting code that could be used to break into computers and exfiltrate stolen data, Chiochiu did more than advocate for the commission of crimes; he *facilitated* crimes by providing the tools necessary to commit them." *Id.* at 10.

Third, the government asserts that dismissal of the Infraud indictment is not an appropriate remedy even if the conduct alleged in the "overt Actions" section of the indictment is protected by the First Amendment. Chiochui is charged with racketeering conspiracy, not with disseminating malware. The response points out that a RICO conspiracy charge does not require the government

to prove that Chiochiu "personally committed, or agreed to commit, *any* overt acts." *Id.* at 11 (citing *Salinas v. United States*, 522 U.S. 52, 65 (1997) (holding that a defendant can be convicted as a RICO "conspirator by agreeing to facilitate only some of the acts leading to the substantive offense")). Thus, even if one or more of Chiochiu's alleged racketeering acts were not itself prosecutable, the Infraud indictment could still stand.

Finally, the government contends dismissal is not appropriate here because a fact-specific balancing of interests would require the court to look beyond the four corners of the Infraud indictment to resolve dual-use speech issues that require the development of the factual record. For these reasons, Chiochiu's motion should be denied.

## **DISCUSSION**

**I.  APPLICABLE LEGAL STANDARDS**

**A.  Motions to Dismiss**

Pursuant to Rule 12 Federal Rules of Criminal Procedure,[4] a "party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." Fed. R. Crim. P. 12(b)(1). Rule 12(b)(3) specifies the motions which must be made before trial. Among them is a motion to dismiss for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(v). "A motion to dismiss is generally capable of determination before trial if it involves questions of law rather than fact." *United States v. Kelly*, 874 F.3d 1037, 1046 (9th Cir. 2017).

In ruling on a pretrial motion to dismiss, "the district court is bound by the four corners of the indictment." *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("On a motion to dismiss an indictment for failure to state an offense the court must accept the truth of the allegations in the indictment in analyzing whether a cognizable offense has been charged."). The court "cannot consider evidence that does not appear on the face of the indictment." *Kelly*, 874 F.3d at 1046 (citing *Lyle*, 742 F.3d at 436; *United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996)). Accordingly, a defendant is not entitled to a pretrial evidentiary hearing to obtain a preview of the government's evidence and an opportunity to cross-examine its witnesses. *Jensen*, 93 F.3d at 669 ("A motion to dismiss the indictment cannot be used

---

[4] All references to a "Rule" or the "Rules" in this order refer to the Federal Rules of Criminal Procedure.

as a device for a summary trial of the evidence.").

In determining whether a cognizable offense has been charged, the court does not consider whether the government can *prove* its case, only whether accepting the facts as alleged in the indictment as true, a crime has been alleged. *United States v. Milovanovic*, 678 F.3d 713, 717 (9th Cir. 2012). Rule 12 motions cannot be used to determine "general issues of guilt or innocence," which "helps ensure that the respective provinces of the judge and jury are respected." *Boren*, 278 F.3d at 914 (citation omitted). A defendant may not challenge a facially-sufficient indictment on the ground that the allegations are not supported by adequate evidence. *Jensen*, 93 F.3d at 669 (citation omitted). However, the court may dismiss an indictment if "it fails to recite an essential element of the charged offense." *United States v. Ezeta*, 752 F.3d 1182, 1184 (9th Cir. 2014).

**B. Sufficiency of an Indictment**

"An indictment 'must be a plain, concise and definite written statement of the essential facts constituting the offense charged'." *United States v. Forrester*, 616 F.3d 929, 940 (9th Cir. 2010) (quoting Fed. R. Crim. P. 7(c)(1)). An indictment is "sufficient if it (1) contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend and (2) enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *United States v. Lazarenko*, 564 F.3d 1026, 1033 (9th Cir. 2009) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)).

An indictment is generally sufficient if it sets forth the offense in the words of the statute itself as long as "those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all of the elements necessary to constitute the offenses intended to be punished." *Hamling*, 418 U.S. at 117. The test of an indictment's sufficiency "is not whether it could have been framed in a more satisfactory manner, but whether it conforms to minimal constitutional standards." *United States v. Livingston*, 725 F.3d 1141, 1146–47 (9th Cir. 2013). The Ninth Circuit has held:

> An indictment will withstand a motion to dismiss "if it contains the elements of the charged offense in sufficient detail (1) to enable the defendant to prepare his defense; (2) to ensure him that he is being prosecuted on the basis of the facts presented to the grand jury; (3) to enable him to plead double jeopardy; and (4) to

>  inform the court of the alleged facts so that it can determine the sufficiency of the charge."

*United States v. Rosi*, 27 F.3d 409, 414 (9th Cir. 1994) (quoting *United States v. Bernhardt*, 840 F.2d 1441, 1445 (9th Cir. 1988)). The sufficiency of an indictment is determined by "whether the indictment adequately alleges the elements of the offense and fairly informs the defendant of the charge, not whether the government can prove its case." *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993) (quoting *United States v. Buckley*, 689 F.2d 893, 897 (9th Cir. 1982)). The court must look at the indictment "as a whole, include facts which are necessarily implied, and construe it according to common sense." *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016) (citing *Buckley*, 689 F.2d at 899).

### C. The First Amendment

In general, the First Amendment prohibits the government from restricting expression because of its message, ideas, subject matter, or content. *United States v. Alvarez*, 567 U.S. 709, 716 (2012). Content-based restrictions on speech are presumed invalid, and the government bears the burden of showing they are constitutional. *Id.* at 716–17. However, the government may restrict some speech without violating the First Amendment. *Id.* at 722. From 1791 to the present, the Supreme Court has upheld content-based restrictions on speech based on an ad hoc balancing of relative social costs and benefits in a limited number of situations. *Id.* at 717. Content-based restrictions on speech have been permitted for a "few historic and traditional categories of expression," including: incitement to imminent lawless actions, obscenity, defamation, so-called "fighting words," true threats, child pornography, fraud, speech integral to criminal conduct, and speech presenting some grave and imminent threat the government has the power to prevent. *Id.* at 717–78 (collecting cases) (internal punctuation and citation omitted).

It is well established that the First Amendment does not prohibit the government from criminalizing speech that is integral to criminal conduct. *United States v. Osinger*, 753 F.3d 939, 946 (9th Cir. 2014). "The right to speak is not unlimited," and the degree of scrutiny courts apply to "challenged speech varies depending on the circumstances and the type of speech at issue." *United States v. Szabo*, 760 F.3d 997, 1001–02 (9th Cir. 2014) (internal citation omitted). The Supreme Court has repeatedly held that any expressive aspects of a defendant's speech are not

protected under the First Amendment when they are "integral to criminal conduct." *Osinger*, 753 F.3d at 947; *see e.g.*, *Gibony v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949) (speech and writing "used as an integral part of conduct in violation of a valid criminal statute" is not protected by the First Amendment). For example, speech used to commit blackmail and extortion, such as threats that the speaker will say or do something unpleasant unless the victim takes, or refrains from taking, certain action, is not constitutionally protected. *Planned Parenthood of Columbia / Willamette, Inc. v. Am. Coal. of Life Activists*, 244 F.3d 1007, 1015 n.8 (9th Cir. 2001), *aff'd in part, rev'd in part on r'hg en banc*, 290 F.3d 1058 (9th Cir. 2002).

## II.   ANALYSIS AND DECISION

Mr. Chiochiu is mentioned by name in paragraphs 4, 8, 12, 14.78, 14.81, 14.101, and 16 of the Infraud indictment. These paragraphs generally describe the manner and means of the RICO conspiracy and Chiochiu's alleged role in the conspiracy. Chiochiu is only charged in count one—racketeering conspiracy. Count one tracks RICO's statutory language and complies with the pleading requirements of Rule 7(c)(1) as it contains a plain, concise, and definite written statement of the essential facts constituting the offense charged. The Infraud indictment alleges the required elements of the RICO conspiracy charged, fairly informs Chiochiu of the charge against which he must defend himself, and enables him to plead an acquittal or conviction in bar of future prosecution. The court must accept the allegations stated in the Infraud indictment as true.

In ruling on Chiochiu's pretrial motion to dismiss, the court does not decide whether the government can prove its case. The grand jury heard the evidence presented and found there was probable cause to charge Chiochiu in the Infraud indictment. The motion fails to establish as a matter of law that posting malware is speech or expressive conduct entitled to the full breadth of First Amendment protection. Even if malware is entitled to some degree of First Amendment protection, it is well settled that government may criminalize speech that facilitates crime. Criminal and civil sanction having some incidental effect on protected activities are subject to First Amendment scrutiny " 'only where it was conduct with a significant expressive element that drew the legal remedy in the first place'," … or " ' where a statute based on a nonexpressive activity has the inevitable effect of singling out those engaged in expressive activity'." *Alexander v. United*

*States*, 509 U.S. 544, 557 (1993) (quoting *Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 706–07 (1986)). Here, as in *Alexander*, the "conduct that drew the remedy" is a racketeering conspiracy. When a law "is not specifically addressed to speech or to conduct necessarily associated with speech (such as picketing or demonstrating)," a First Amendment overbreadth challenge will "rarely succeed." *Osinger*, 753 F.3d at 944 (quotation omitted). Although certain predicate offenses may implicate First Amendment rights, RICO "does not criminalize constitutionally protected speech." *Alexander*, 509 U.S. at 555. Accordingly, dismissal of the Infraud indictment is not warranted.

After the government closes its evidence, or after the close of the evidence, Mr. Chiochiu may move for a judgement of acquittal on the grounds the evidence is insufficient to sustain a conviction. *See* Fed. R. Crim. P. 29. In a motion for judgement of acquittal he may assert arguments that any speech or conduct the government introduced in evidence was speech and expression protected under the First Amendment. However, these are not issues this court may decide in a pretrial motion to dismiss.

Having reviewed and considered the matter,

**IT IS ORDERED** that the Motions for Joinder (ECF No. 483, 485) are **GRANTED**.

**IT IS RECOMMENDED** that Chiochiu's Motion to Dismiss Indictment (ECF No. 473) be **DENIED**.

DATED this 8th day of April 2019.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE