UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br>v.<br>VALERIAN CHIOCHIU,<br><br>  Defendant. | Case No. 2:17-cr-00306-JCM-PAL<br><br>**REPORT OF FINDINGS AND RECOMMENDATION**<br><br>(Mot Suppress – ECF No. 474) |

Before the court is defendant Valerian Chiochiu's ("Chiochiu") Motion to Suppress Evidence (ECF No. 474), which was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4 of the Local Rules of Practice. The court has considered the motion and the government's Opposition (ECF No. 505). Chiochiu did not file a reply and the deadline to do so has now expired.[1]

## BACKGROUND

**I.   THE INFRAUD INDICTMENT**

Mr. Chiochiu (a.k.a. "Onassis," "Flager," "Socrate," and "Eclessiastes") and 34 co-defendants are charged in a Second Superseding Indictment (ECF No. 303) ("Infraud indictment") returned January 30, 2018.[2] This case arises from allegations that the defendants operated a criminal enterprise known as "Infraud" in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. Defendants allegedly engaged in identity

---

[1] Defendant Pius Wilson filed an omnibus Motion for Joinder (ECF No. 481) seeking to adopt the motions of his co-defendants to the extent any motion is applicable to him. The current motion argues that Choichiu's Fourth Amendment rights were violated when the government executed a search warrant at his residence. Because Fourth Amendment rights are personal rights, they may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–34 (1978). Wilson does not specifically claim the search warrant or Chichiu's arguments apply to him. Thus, Wilson's joinder request is denied as to this motion. *See United States v. Lopez-Cruz*, 730 F.3d 803, 807 (9th Cir. 2013).

[2] A total of 36 defendants were named in the Infraud indictment. One defendant has been dismissed.

theft and financial fraud with racketeering acts that include money laundering, trafficking in stolen means of identification; trafficking in, production and use of counterfeit identification; identity theft; trafficking in, production and use of unauthorized and counterfeit access devices; bank fraud; and wire fraud, as well as services in connection with these acts. ECF No. 303 at 6, ¶ 1.

Mr. Chiochiu is accused of being a member of Infraud who provided "guidance to other members on the development, deployment, and use of random access memory ("RAM") point-of-sale ("POS") malware as a means of harvesting stolen data." *Id.* at 17. He is charged in count one with RICO conspiracy in violation of 18 U.S.C. § 1962(d).[3] Count one alleges the defendants were employed by and associated with the Infraud "enterprise" and knowingly conspired to violate § 1962(c) by participating in a pattern of racketeering activity consisting of multiple acts indictable under 18 U.S.C. § 1028 (fraud and related activity in connection with identification documents, authentication features, and information), § 1029 (access device fraud), § 1343 (fraud by wire, radio, or television), § 1344 (bank fraud), and § 1543 (forgery or false use of passport). ECF No. 303 at 24, ¶ 12.

**II.    THE SEARCH WARRANT**

The motion challenges a search warrant issued by U.S. Magistrate Judge Autumn D. Spaeth for the home at 68 Borghese in Irvine, California 92618 ("Borghese property"). *See* search warrant & affidavit, Mot. Ex. A (ECF No. 474-1). Special Agent Michael Adams ("affiant" or SA Adams") of Immigration and Customs Enforcement, Homeland Security Investigations ("HSI"), submitted a 49-page affidavit in support of the warrant application. SA Adams provided details of his training and experience on, among other things, cybercrime, digital devices, and cryptocurrency. *E.g.*, *id.* at 35–44.

The affidavit provides details of the Infraud indictment and the alleged racketeering conspiracy in furtherance of "a cybercriminal enterprise known as the Infraud Organization." *Id.* at 4. The affidavit indicates that Chiochiu is accused of posting on the Infraud forum, and thereby providing knowledge and support to other Infraud members regarding computer malware. Mr.

---

[3] Counts two through nine allege possession of 15 or more counterfeit and unauthorized access devises in violation of 18 U.S.C. § 1029(a)(3) and (c)(1)(A)(I), along with 18 U.S.C. § 2. ECF No. 303 at 39–42.

2

Chiochiu "was also under investigation for being the author of a variant of malware commonly referred to as 'FastPOS', which was designed to infect point-of-sale ('POS') and other computer terminals that handled billing and credit card data." *Id.*

The Infraud indictment was unsealed in February 2018 at the same time law enforcement officials coordinated an international takedown operation. Unlike other defendants in the United States at that time, Mr. Chiochiu was not located by law enforcement. Federal agents were unable to locate his residence or execute a search warrant prior to his arrest. Chiochiu retained counsel and arranged a self-surrender. The affiant states that the self-surrender allowed Chiochiu to "minimize his exposure and prevent the government from being able to obtain and examine evidence that he did not want the government to obtain and examine." *Id.* at 5.

The affidavit states that Chiochiu provided the court, pretrial services, and the affiant an address where he did not actually live when he self-surrendered on March 28, 2018. Mr. Chiochiu told the affiant that his home address was 669 Kesha Court, San Jacinto, California 92583 ("Kesha property"). *Id.* at 19. In early September 2018, federal law enforcement began conducting surveillance on the Kesha property. On the first day, neither Chiochiu nor his wife, Irina Calaras, were seen at the Kesha property. *Id.* at 20. Three vehicles were observed at the home, but a records check revealed that none of the vehicles were registered to Chiochiu or his wife. On the second day, neither Chiochiu nor his wife were seen at the Kesha property. Four additional vehicles were observed. None of the four vehicles were registered to Chiochiu or his wife, but two were registered to his in-laws, Calaras' parents. Federal law enforcement continued surveillance of the Kesha property for a third, fourth, and fifth day with negative results. *Id.* at 20–22. A subpoena was issued to the Southern California Edison power company seeking any customer account information for accounts in Chiochiu's or Calaras' name. *Id.* at 22. The power company responded with records of an account in Calaras' name for the Borghese property. *Id.*

In mid-October 2018, federal law enforcement began periodic surveillance at the Borghese property. Agents observed Calaras at the Borghese property along with a white BMW SUV registered in her name. On or about October 25, 2018, at approximately 9:00 a.m., federal law enforcement agents observed an adult male matching Chiochiu's description leaving the residence

and taking trash out to the curb. *Id.* at 23. The affiant reviewed a surveillance photo of Chiochiu taking the trash out and verified that the depicted individual was indeed Chiochiu. *Id.*

Chiochiu self-surrendered on March 28, 2018, bringing with him two computer hard drives and an iPhone for the government to examine. A preliminary forensic analysis of the devices revealed that Chiochiu conducted a factory reset on the iPhone, thus destroying any data previously on the device. The night before turning himself in, he also "surgically wiped" selected data from the hard drives using a counter-forensic system maintenance program. *Id.* at 5. This process prevented the data on the hard drives from being reviewed or recovered. However, a large amount of "innocuous data," including personal documents, photos, the operating system itself, and other personal items, were left intact on both drives. The affiant represented, based on his training and experience, this suggested Chiochiu "was attempting to conceal the fact that the drives had been sanitized." *Id.* The affiant stated that "the timing of this targeted secure deletion was significant":

> Evidence that CHIOCHIU surgically wiped his hard drives the day before turning them over to the government upon his surrender to face computer-related criminal charges tends to suggest that CHIOCHIU believed there would be incriminating evidence on the hard drives that he was providing. This is further corroborated by the targeted or "surgical" nature of the secure deletion, where many innocuous personal files, photographs and documents were left intact, and only certain files and directories on the devices were wiped.

*Id.* at 26, ¶ 55. Nevertheless, the government was able to recover forensic artifacts indicating the presence of the FastPOS malware on one of the drives. *Id.* at 5.

The affiant represented, based on his training and experience, that Mr. Chiochiu appeared to be "a relatively sophisticated software developer":

> software developers often retain previous code they have written, research they have done, and tools they have used, in order to minimize the time and effort necessary in the future to solve similar problems that could be solved with a minor adaptation of their existing libraries. It was notable to your affiant, based on my training and experience, that the devices examined, in spite of belonging to such an apparently sophisticated software developer, and in spite of having evidence of at least one software development tool present, lacked such a body of prior work.

*Id.* at 6. Thus, the affiant believed, based on training and experience, that Chiochiu possessed a body of prior work, and stored it for reference and safekeeping on other electronic devices, likely located at Chiochiu's residence—the Borghese property. *Id.* at 6–7. The affiant also believed Chiochiu's body of work would contain evidence relevant to his charged conduct. *Id.* at 6.

Additionally, the affiant states that he reviewed bank records obtained via subpoena during the course of the investigation pertaining to Chiochiu's checking and savings accounts. *Id.* at 32. In reviewing the records, the affiant learned that from September 2013 until February 2018, Mr. Chiochiu deposited $1,058,812.61 worth of checks from an online marketplace that allows members to buy and sell gift cards at discounted rates ("gift card website"). The gift card website advertised itself as a way to "earn some extra cash by selling off unneeded gift cards," which suggested that Chiochiu's pattern of activity was vastly different than others using the gift card website. *Id.* at 33. Infraud's alleged criminal conduct includes "carding," which is "the general concept of purchasing retail items with counterfeit credit cards and stolen credit." *Id.* The affiant represented that, in his training and experience, carders like Chiochiu "frequently engage in the purchase and sale of contraband gift cards as a means of converting stolen payment data, such as credit card numbers, into saleable merchandise and criminal proceeds." *Id.* The bank records also showed at least 183 cash withdrawals of $1,000 or more since August 2013, totaling $982,588.29. *Id.* at 34. Given the large amount of cash withdrawn and the likelihood that Chiochiu's income from the gift card website was related to his criminal carding activity, the affiant represented, "it is probable that proceeds of CHIOCHIU's criminal activity are located at his residence located at the [Borghese property]. It is also probable that gift cards, counterfeit credit cards, related electronic records, or other evidence of CHIOCHIU's criminal carding activity may be located at the residence." *Id.* at 34–35.

The search warrant was issued on November 5, 2018. *Id.* at 1. Federal agents executed the search warrant on November 7, 2018, and seized 22 items, including cell phones, laptops, hard drives, and other miscellaneous items. *See* search warrant return, Mot. Ex. B (ECF No. 474-2).

**III.   THE MOTION TO SUPPRESS**

Mr. Chiochiu's motion (ECF No. 474) argues the search warrant for the Borghese property was not supported by probable cause. Chiochiu claims the affidavit "consisted of speculation, conjecture, and guesswork about the presence of incriminating evidence implicating Defendant in computer-related crimes." *Id.* at 2. The motion claims the affidavit lacks specific evidence that Chiochiu himself possessed the evidence sought, much less that he possessed evidence at the

5

Borghese property. Chiochiu therefore argues the search warrant was not supported by probable cause and he asks the court to suppress all evidence obtained at the Borghese property.[4]

Mr. Chiochiu asserts that his use of "CCleaner" on the hard drives he surrendered to government did not add or subtract to the probable cause to search the Borghese property. CCleaner is a counter-forensic system maintenance program. The affidavit suggests that CCleaner is a "nefarious tool, and its use indicated that Chiochiu was involved in unlawful activity. However, Chiochiu argues that the affidavit presented improper conjecture about his motivations and failure to turn over inculpatory material to the government.

Chiochiu argues that the affidavit "offers no direct, or even circumstantial, evidence" that he was storing electronic devices or any other contraband at the Borghese property. *Id.* at 4. The information in the affidavit consisted mostly of the affiant's training and experience regarding other software developers' practices, not evidence directly relating to Chiochiu's habits, practices, or conduct. The fact that his "body of work" was not was not located on devices he voluntarily surrendered did not constitute evidence that he possessed incriminating evidence on other devices.

Mr. Chiochiu also claims the surveillance photo showing him taking out the trash at the Borghese property on one occasion, and evidence that his wife is the leaseholder of the residence, is not sufficient to connect him to the Borghese property. The evidence presented in the affidavit "is simply too speculative to adequately establish a nexus" between Chiochiu's alleged criminal conduct and the Borghese property. *Id.* at 5. Rather, "the reasonable inferences from the affiant's own description of Chiochiu and his prior activities, including using CCleaner on his hard drives, *decrease* rather than *increase* the probability that additional electronic devices containing incriminating information would be seized at Borghese." *Id.*

In its Response (ECF No. 505), the government argues that Magistrate Judge Spaeth properly issued the search warrant because there was probable cause to believe that (i) Chiochiu was involved in the development and distribution of malware, along with other criminal activity, and (ii) evidence of Chiochiu's criminal activity would be stored on digital devices at the Borghese

---

[4] Defendant represents that he has not received any discovery regarding what evidence, whether inculpatory or exculpatory, was seized from the Borghese property as of February 1, 2019, the date the suppression motion was filed. His motion seeks to preserve his right to challenge the validity of the search warrant.

1  property. *Id.* at 5–6. The government points out that Chiochiu does not argue the affidavit fails to
2  establish probable cause of his involvement in the charged crimes. *Id.* at 7. Rather, he asserts
3  there was no probable cause that evidence would be found at the Borghese property. However,
4  the affidavit outlines evidence connecting Chiochiu to the Borghese property, including the
5  subpoenaed information from the power company showing his wife's utility account at the home
6  and extensive surveillance efforts by federal agents. The government contends it was reasonable
7  to seek evidence at the Borghese property whether Chiochiu lives at the residence full time or just
8  stays there regularly to visit his wife and child. "If he were dividing his time between multiple
9  residences, the Chiochiu would naturally be more likely to store incriminating evidence at the
10  address that he *concealed* from Pretrial Services, not the one that he provided." *Id.* at 8.

11  Responding to Chiochiu's assertion that evidence was unlikely to be found at the Borghese
12  property because his past behavior suggests he would have destroyed it already, the government
13  claims this argument is unavailing for two reasons. First, Mr. Chiochiu didn't know the
14  government was aware of the Borghese property, and therefore he had no reason to believe a search
15  of that residence was imminent. Because he had no reason to suspect a search was coming, he was
16  not likely to destroy valuable items such as his gift cards or malware source code. "When the
17  Defendant wiped his devices before, it was right before he *knew* they would be obtained by the
18  Government, at the time and place of his choosing." *Id.* Second, as explained in the affidavit,
19  forensic evidence is extremely resilient to attempts at destruction. Even if Chiochiu had attempted
20  to destroy evidence, there was still probable cause to believe the government would be able to
21  recover at least some evidence. Additionally, an attempt to destroy evidence by using software
22  such as CCleaner, would likely leave behind evidence of that attempted destruction, showing
23  consciousness of guilt. For these reasons, the government asks the court to deny Chiochiu's
24  suppression motion.

### **DISCUSSION**

**I.    APPLICABLE LEGAL STANDARDS**

27  The Fourth Amendment secures "the right of the people to be secure in their persons,
28  houses, papers, and effects against unreasonable searches and seizures." U.S. Const. amend. IV.

1  Evidence obtained in violation of the Fourth Amendment, and evidence derived from it may be
2  suppressed as the "fruit of the poisonous tree." *Wong Sun v. United States*, 371 U.S. 471, 484–87
3  (1963); *United States v. Lundin*, 817 F.3d 1151, 1157 (9th Cir. 2016); *United States v. McClendon*,
4  713 F.3d 1211, 1215 (9th Cir. 2013) ("Searches and seizures that offend the Fourth Amendment
5  are unlawful and evidence obtained as a direct or indirect result of such invasions is considered
6  'fruit of the poisonous tree' and is inadmissible under the exclusionary rule.").

### A. Probable Cause

The Fourth Amendment's Warrant Clause provides that a warrant may be issued only "upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. This language imposes three requirements. *Dalia v. United States*, 441 U.S. 238, 255 (1979). A valid search warrant must be: (1) issued by a neutral and detached judge; (2) supported by probable cause to believe the evidence sought will aid in a particular apprehension or conviction for a particular offense; and (3) describe the things to be seized and the place to be searched with particularity. *United States v. Artis*, --- F.3d ---, 2019 WL 1375260, at *3 (9th Cir. Mar. 27, 2019) (citing *Dalia*, 441 U.S. at 255).

The probable cause standard is a fluid and nontechnical concept that is incapable of precise definition or quantification. *Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003); *United States v. Hill*, 459 F.3d 966, 972 (9th Cir. 2006) (probable cause is "not readily susceptible to multifactor tests or rebuttable presumptions"). "Probable cause exists where the totality of the circumstances indicates a 'fair probability that . . . evidence of a crime will be found in a particular place'." *United States v. Elmore*, 917 F.3d 1068, 1074 (9th Cir. 2019) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)); *United States v. Alaimalo*, 313 F.3d 1188, 1193 (9th Cir. 2002) (probable cause requires only a fair probability or substantial chance of criminal activity). "This standard does not require the affidavit to establish that the evidence is in fact in the place to be searched, or even that it is more likely than not to be there." *Elmore*, 917 F.3d at 1074 (citing *United States v. Fernandez*, 388 F.3d 1199, 1254 (9th Cir. 2004)); *United States v. Kelley*, 482 F.3d 1047, 1050 (9th Cir. 2007) (neither certainty nor a preponderance of the evidence is required). "Rather, the issuing judge

'need only conclude that it would be reasonable to seek the evidence in the place indicated in the affidavit'." *Elmore*, 917 F.3d at 1074 (quoting *Fernandez*, 388 F.3d at 1254).

It is well recognized that law enforcement officers can rely on their own experience, and the experience and information of other law enforcement officers, in establishing probable cause. *United States v. Butler*, 74 F.3d 916, 920–21 (9th Cir. 1996). An officer's "first hand knowledge" of a defendant's criminal conduct, combined with the officer's "experience" with other individuals who committed similar crimes, provides a "substantial basis" for a magistrate judge to determine that probable cause exists. *United States v. Johnson*, 913 F.3d 793, 802 (9th Cir. 2019) (citing *United States v. Terry*, 911 F.2d 272, 275–76 (9th Cir. 1990)). Similarly, a magistrate judge " 'may rely on the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found'." *Fernandez*, 388 F.3d at 1253 (quoting *Terry*, 911 F.2d at 275).

### B. Standard of Review for Search Warrants

The Supreme Court established the standard of review for the issuance of a search warrant in *Illinois v. Gates*, 462 U.S. 213 (1983). The issuing magistrate judge must make a practical, common-sense decision whether, given totality of the circumstances set forth in the affidavit, including the veracity and basis of knowledge of people supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Id*. at 238. A reviewing court has a duty to ensure that the magistrate judge had a "substantial basis" for concluding that probable cause existed. *Ewing v. City of Stockton*, 588 F.3d 1218, 1223 (9th Cir. 2009) (citing *Gates*, 462 U.S. at 238–39). In doubtful cases, the court should give preference to the validity of the warrant. *Kelley*, 482 F.3d at 1050–51 (citing *Gates*, 462 U.S. at 237 n.10). The court should not "flyspeck" the affidavit supporting a search warrant through de novo review; instead, the magistrate's determination "should be paid great deference." *Id.* at 1051 (citing *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (en banc)). As a result, a judge's determination that an affidavit provided probable cause to issue a search warrant "will be upheld unless clearly erroneous." *United States v. Alvarez*, 358 F.3d 1194, 1203 (9th Cir. 2004).

II. **ANALYSIS AND DECISION**

Reviewing the affidavit as a whole, applying the totality of the circumstances test, and

showing the issuing judge great deference as the Supreme Court requires, the court concludes that Magistrate Judge Spaeth had a substantial basis for concluding that probable cause existed to issue the search warrant for the Borghese property. The affidavit describes the Infraud organization, the charges against Mr. Chiochiu, and his alleged conduct. It carefully describes the affiant's reasons for believing Chiochiu was residing at the Borghese property and why evidence would be found there. It informs the issuing court about the affiant's training and experience with digital devices, cryptocurrency, and cybercrimes in general. The affidavit also provides detailed explanations of why SA Addams believed, based on is training and experience, that Chiochui would have other computers and devices on which valuable libraries of personal code developed by software developers like Chiochui could be found. The affidavit relates that private libraries had been deleted from the devices Chiochiu turned over at the time of his surrender and why SA Adams believed Chiochiu would have stored his private libraries and source code in other locations.

Magistrate Judge Spaeth was entitled to rely on SA Adams' extensive training and experience in making her decision. The evidence presented in the affidavit, taken as a whole, established the probability that evidence of Chiochiu's crimes would be found at the Borghese property, the premises sought to be searched, based on factual and practical considerations of everyday life on which reasonable and prudent people act. *See Gates*, 462 U.S. at 235 ("only the probability, and not a prima facie showing of criminal activity, is the standard of probable cause"). The court finds that Magistrate Judge Spaeth had a substantial basis for concluding that probable cause for the search warrant existed.

Having reviewed and considered the matter,

**IT IS RECOMMENDED** that defendant Valerian Chiochiu's Motion to Suppress Evidence (ECF No. 474) be **DENIED**.

DATED this 10th day of April, 2019.

PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE