───── 2:17-cr-00306-JCM-VCF ─────

1        UNITED STATES DISTRICT COURT

2           DISTRICT OF NEVADA

3

4  UNITED STATES OF AMERICA,        )
                                    ) Case No. 2:17-cr-00306-JCM-VCF
5              Plaintiff,           )
                                    ) Las Vegas, Nevada
6         vs.                       ) Wednesday, November 17, 2021
                                    ) 10:09 a.m. - 10:53 a.m.
7  VALERIAN CHIOCHIU,               ) Courtroom 6A
                                    )
8          Defendant.               ) Sentencing & Disposition
                                    )
9                                   )
                                    ) **C E R T I F I E D   C O P Y**
10 _____ )

11

12

13         REPORTER'S TRANSCRIPT OF ZOOM PROCEEDINGS

14       BEFORE THE HONORABLE JAMES C. MAHAN,
              UNITED STATES DISTRICT JUDGE

15

16

17

18   APPEARANCES:       See next page

19

20

21   COURT REPORTER:    Samantha N. McNett, RPR, CRR, CCR, CSR
                        United States District Court
22                      333 Las Vegas Boulevard South, Room 1334
                        Las Vegas, Nevada  89101
23                      Samantha_McNett@nvd.uscourts.gov

24

25   Proceedings reported by machine shorthand, transcript produced
     by computer-aided transcription.

———2:17-cr-00306-JCM-VCF———

1                          **<u>APPEARANCES</u>**

2

 For the Plaintiff:

3
        **CHAD WILLIAM MCHENRY, ESQ.**
4       US DEPARTMENT OF JUSTICE
        1301 New York Avenue NW
5       Washington, DC 20530
        202-615-1286
6

7  For the Defendant:

8       **ALAN EISNER, ESQ.**
        EISNER GORIN, LLP
9       14401 Sylvan Street, Suite 112
        Van Nuys, California 91401
10      818-781-1570

11
 Also present:
12
        Michelle Cravotta, United States Probation Officer
13
        Marina Oniceanu, Romanian Interpreter
14
                              *  *  *
15

16

17

18

19

20

21

22

23

24

25

2:17-cr-00306-JCM-VCF

1    LAS VEGAS, NEVADA; WEDNESDAY, NOVEMBER 17, 2021; 10:09 A.M.

2                            --oOo--

3                   P R O C E E D I N G S

4            THE COURTROOM ADMINISTRATOR:  You do so solemnly swear

5    that you will truly, fairly, justly, and impartially act as an

6    interpreter in the cause now pending before this Court, so help

7    you God?

8            THE INTERPRETER:  I do.

9            THE COURTROOM ADMINISTRATOR:  If you can please state

10   your name and spell it for the record.

11           THE INTERPRETER:  Marina Oniceanu, O-N-I-C-E-A-N-U.

12           THE COURTROOM ADMINISTRATOR:  Thank you.

13           This is the time set for imposition of sentence in

14   case number 2:17-cr-00306-JCM-VCF, United States of America

15   versus Valerian Chiochiu.

16           Counsel, please note your appearance for the record.

17           MR. MCHENRY:  Good morning, your Honor.  Chad McHenry

18   for the United States.

19           MR. EISNER:  Good morning, your Honor.  Alan Eisner

20   appearing via the Zoom conference, attorney for defendant

21   Valerian Chiochiu.  And Mr. Chiochiu is present in court and,

22   your Honor, he has the assistance of a Romanian language

23   interpreter.

24           THE COURT:  All right.  Who's appearing for the

25   defendant?

```
 1              MR. EISNER:  I am, your Honor.  Alan Eisner.

 2              THE COURT:  All right.  This says -- that's a

 3    different one.  I'm sorry.  I had a different -- all right.

 4    Mr. McHenry and Mr. Eisner.  Okay.  All right.  Now we're

 5    properly identified.  Okay.  Thank you.

 6              Do you pronounce your last name Chiochiu?

 7              THE DEFENDANT:  (Foreign language spoken) Chiochiu.

 8              THE COURT:  Chiochiu?  Okay.

 9              Mr. Chiochiu, do you understand you have a right to

10    a -- to appear in person in a criminal proceeding?

11              Do you understand that?

12              THE DEFENDANT:  Yes, sir.  I understand I have the

13    right to appear in person.

14              THE INTERPRETER:  So he speaks English?

15              MR. EISNER:  Your Honor, can I say this?

16    Mr. Chiochiu's English is very good.  Can I have a second with

17    him to see if he wants to communicate with you in English and

18    then maybe ask for an interpretation if that's required for

19    certain questions?

20              THE COURT:  Yeah, we can just have the interpreter

21    stand by if that's the case.  So go ahead and take a moment to

22    talk to your client.

23              MR. EISNER:  All right.  Thank you.

24              THE COURT:  Yes, sir.

25              MR. EISNER:  That's what we're going to do, your
```

2:17-cr-00306-JCM-VCF

1  Honor.  Thank you for that option.  He's going to move ahead in

2  English, and if he needs the Romanian language interpreter,

3  we'll inquire at that point.

4          THE COURT:  All right.  Thank you.

5          All right.  Mr. Chiochiu, I have before me what

6  purports to be a written waiver of right to appear in person at

7  criminal proceeding.  Did you sign this on or about, looks

8  like, November 6th of this year?

9          THE DEFENDANT:  Yes, your Honor, I signed it.

10          THE COURT:  And you consent to appear today remotely,

11  which is what we're doing, rather than in person which is your

12  right; is that correct?

13          THE DEFENDANT:  Yes, sir.

14          THE COURT:  All right.  Thank you.

15          I hereby enter an order then accepting the defendant's

16  waiver and find that his waiver is knowing and voluntary.

17          All right.  Any reason sentence should not be imposed

18  at this time?

19          MR. MCHENRY:  No, your Honor.

20          MR. EISNER:  No, your Honor.  Not from the defendant's

21  perspective.

22          THE COURT:  All right.  Mr. Chiochiu, this is the time

23  set for imposition of sentence upon you in case number

24  2:17-cr-306.

25          On July 31, 2020, you appeared before the Court and

—— 2:17-cr-00306-JCM-VCF ——

1  entered a plea of guilty to conspiracy to engage in a racketeer

2  influenced corrupt organization which is a violation of 19 --

3  18 USC Section 1962(d).  Having reviewed the presentence report

4  and plea agreement, the Court hereby accepts your guilty plea

5  and adjudicates you guilty of this charge.

6         Now, the Government filed one objection to the

7  presentence report pertaining to the applicability of an

8  obstruction of justice enhancement.  The probation department

9  responded and resolved the objection by amending the report to

10  reflect the obstruction of justice enhancement.

11         Is that correct, Mr. McHenry?  Your objection is moot

12  now?

13         MR. MCHENRY:  It is, your Honor.  Thank you.

14         THE COURT:  Thank you.

15         No objections to the presentence report were filed by

16  the defendant.  Before we proceed, any other additional

17  objections or disputes?

18         MR. MCHENRY:  Nothing from the Government, Judge.

19         THE COURT:  Thank you.

20         MR. EISNER:  Nothing from the defendant.

21         THE COURT:  Thank you.

22         All right.  Mr. Chiochiu, did you read the presentence

23  report?

24         THE DEFENDANT:  Yes, your Honor, I read the

25  presentence report.

1          THE COURT:  And did you discuss it with your attorney?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Did you find any errors or discrepancies

4     other than he may have pointed out to me?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  Okay.  Probation department calculated --

7     as a matter of fact, there were no objections from the defense;

8     is that correct, Mr. Eisner?

9          MR. EISNER:  That is correct, your Honor.  We believe

10    it's an accurate calculation of the guidelines.

11         THE COURT:  Thank you.

12         All right, Mr. Chiochiu.  Let's see.  The probation

13    department calculated the base offense level to be 43.  Two

14    levels were added for obstruction of justice.  Three levels

15    were subtracted for acceptance of responsibility resulting in a

16    total offense level of 42.  The total criminal history points

17    are 0 resulting in a criminal history category of Roman numeral

18    I.

19         The maximum statutory term of imprisonment is

20    20 years.

21         The maximum statutory fine is $1.136 billion -- that's

22    with a "B" -- and a special assessment of $100 per count is

23    mandatory.

24         Based on a total offense level of 42 and the criminal

25    history category of Roman numeral I, the guideline range would

—————— 2:17-cr-00306-JCM-VCF ——————

1   be 360 months to life, which exceeds the statutory maximum

2   sentence of 240 months.  Thus, the custodial guideline range is

3   240 months.

4            The guideline range for supervised release is 1 to

5   3 years.

6            And the guideline fine range is $50,000 to $1,136,000.

7            Pursuant to the plea agreement accepted by the Court,

8   under Federal Rule of Criminal Procedure 11(c)(1)(C), the Court

9   will impose a sentence that is no greater than 132 months.

10           Now, Mr. McHenry, any additional comments before I

11  impose sentence?

12           MR. MCHENRY:  I have some briefly, your Honor.

13           THE COURT:  Yes, sir.

14           MR. MCHENRY:  I just -- thank you, Judge.

15           I just wanted to submit to the Court and I suppose

16  reiterate the Government's position that Mr. Chiochiu is one of

17  the most sophisticated and therefore economically dangerous

18  defendants the Government indicted in this case.

19           Mr. Chiochiu has an extremely an advanced technical

20  skill set.  He is a software developer.  He has admitted to

21  authoring this strain of malware.  The Government, of course,

22  included in the plea agreement and has evidence indicating that

23  over the course of about five years, he was able to utilize

24  that skill set to acquire in excess of a million dollars --

25  that's about $200,000 per year -- in checks from a single

1    online gift card marketplace that he was using to launder his

2    proceeds.

3           With respect to his involvement in the conspiracy, I

4    reviewed the posts and messages that he sent and received and

5    made this morning, all of which, of course, were provided in

6    discovery.  He had 57 posts on the forum from December 2012

7    through January 2017.  He sent or received 92 private messages

8    during that same time period.

9           Looking at the contents of these posts, in addition to

10   the sort of more typical reviews of vendors, you know,

11   discussion of general criminal conduct, he is -- he is very

12   much talking about the sort of sophisticated conduct that makes

13   the Government believe he's dangerous.  In one post, October of

14   2014, he indicates with respect to a piece of software called a

15   POS extractor, or a point of sale extractor, "I have the source

16   code.  If you have many point of sale terminals, we can infect

17   them and you send me some bins (phonetic)," i.e., some credit

18   card data.  He was a very active participant in this

19   conspiracy.

20          I would submit to the Court with respect to the

21   cofounder, Mr. Medvedev, Mr. Chiochiu's criminal conduct that

22   he directly participated in was at least as severe, at least as

23   economically dangerous.

24          And then you take into account the fact that after he

25   agreed to turn himself in with evidence, knowing what he was

2:17-cr-00306-JCM-VCF

1  being charged with and investigated for and knowing that he

2  agreed through his attorney to provide that evidence to the

3  Government, he attempted to surgically wipe some of those

4  computer hard drives.  And I say surgically because if the

5  Government hadn't had a very skilled forensic examiner examine

6  those drives, we never would have found the tiny connection

7  between that hard drive and the malware that he overlooked when

8  he erased that data.  It looked, for all intents and purposes,

9  to the untrained eye as if the drive was clean and had nothing

10 do with that malware.

11       So your Honor, I would submit that based both the

12 severity of his criminal conduct, his involvement in the

13 organization and on the forum and, in addition, the behavior

14 that really distinguishes from Mr. Medvedev, the after-the-fact

15 obstruction and destruction of evidence, your Honor, I would

16 respectfully submit that a sentence of 132 months is merited

17 and appropriate in this case.

18       That's all I have.  Thank you.

19       THE COURT:  All right.  Now, Mr. Chiochiu, would you

20 like to address the Court?  Would you like to have your

21 attorney speak on your behalf, Mr. Eisner?  Or both of you may

22 speak.  It's your option.

23       MR. EISNER:  Thank you, your Honor.  Let me start --

24 and I think Mr. Chiochiu wants to address the Court personally

25 and -- and express some thoughts.

————— 2:17-cr-00306-JCM-VCF —————

1          First of all, your Honor, we're here before you after

2    a guilty plea, which you're aware of, and according to the plea

3    agreement and the PSR, we do believe that that's an accurate

4    characterization of the guidelines.

5          And the Government is asking for a sentence of

6    11 years and, your Honor, as you can see from my sentencing

7    position, we've asked for a sentence of 72 months, which is six

8    years.

9          And I want to first start off by saying that this

10   guideline range is -- it is what it is because of the loss in

11   the case.  There's a 30 point jump because of a $568 million

12   loss that was due to the entire conspiracy of which

13   Mr. Chiochiu played a -- certainly played a role but played a

14   small role, a relatively small role in that loss.

15         THE COURT:  Now you sound like a Government -- you

16   sound like you're one of those Government bureaucrats.  You

17   know, it's only 568 million.  What the hell?  That's not that

18   much.

19         MR. EISNER:  Well --

20         THE COURT:  I mean, that's a significant loss.

21         MR. EISNER:  I hear you.  And I'm not -- I don't want

22   to minimize it.

23         I'm reminded by a president -- I forget who he was,

24   but they were talking about the budget and one of his advisers

25   says, "Well it's a million dollars," and then the president

 1    said, "Well, a million here, a million there.  Pretty soon

 2    you're starting to talk about real money."  And --

 3           THE COURT:  I think that was Everett Dirksen,

 4    actually, the Senate majority leader.  Of course, a young man,

 5    I believe, yeah.

 6           MR. EISNER:  You probably know --

 7           THE COURT:  It doesn't matter.  Go ahead.

 8           MR. EISNER:  Well, I -- yeah.  I -- I don't want to

 9    minimize the loss, your Honor.  I don't.

10           But I do want to say that, you know, it was due to the

11    multitude of persons that were involved of which Mr. Chiochiu

12    admits he had a part in, which he acted in, a serious part in,

13    which he's acknowledged.  But nonetheless, that's why the

14    guidelines are where they are.

15           And even the probation department recognizes that the

16    guideline range would be improper in this case.  And even the

17    Government, to their credit, believes that it's an improper

18    barometer of sort of sentencing in this case.

19           And, you know, again, I just don't want to minimize

20    that -- that fact, but I do want to say that the 30 point bump

21    in the offense level is due to the loss in the case and -- of

22    which, again, Mr. --

23               (Technical difficulties.)

24           MR. EISNER:  I --

25               (Technical difficulties.)

2:17-cr-00306-JCM-VCF

1           THE COURT:  You're breaking up, Mr. Eisner.  If you

2    could, go back just a little bit.  You want to minimize the

3    loss, but something.  And that's where you broke up, if you can

4    hear me.

5           (Court and courtroom administrator conferring.)

6           (Technical difficulties.)

7           MR. EISNER:  I'm sorry.  That's on my end.  I

8    apologize.  And it was on my end.

9           May I move forward, your Honor?

10          THE COURT:  Yes, sir.

11          MR. EISNER:  I -- we did --

12          THE COURT:  You were saying something about you didn't

13   want to minimize the loss, but something, and then that's where

14   we lost you.

15          MR. EISNER:  Well, I'll leave it at that.  We have

16   admitted to a substantial factual basis.  We don't want to

17   minimize it.  He's here before you after accepting

18   responsibility.

19          I do want to emphasize, your Honor, I believe the six

20   year sentence that we've requested is a substantial sentence

21   for someone with no criminal history whatsoever.  I realize

22   that he's a criminal history I and sometimes people say, well,

23   that's already built into the guidelines, no criminal history,

24   but he certainly has absolutely a clean criminal history,

25   different from other people who, perhaps, were arrested or had

 1  minor offenses.  But he's led a law-abiding life and I -- I do

 2  want to emphasize that.

 3          I also want to emphasize, your Honor, that Mr. --

 4  Mr. Chiochiu, in relation to other people in this case -- and I

 5  put this in my sentencing position.  Defendant number 2,

 6  Mr. Medvedev, he received a sentence of 120 months.  And this

 7  is the man who organized the forum, organized entirely the

 8  in-fraud organization.  He was the administrator.  It was the

 9  highest role in the hierarchy.  He managed the day-to-day

10  operations of the -- of the operation.  He managed the

11  long-term strategic vision of the organization.  He placed

12  money in escrow to the launders through which members can cash

13  out their gains.  And he set the rules for the organization.

14  And that man got a sentence of 10 years.  And the Government is

15  seeking a sentence in excess of that for Mr. Chiochiu.  So, you

16  know, that's one thing I'm asking you to consider, your Honor,

17  is the relative sentences that other people got.

18          Another person was defendant Torteya, defendant number

19  5, and he was a VIP member, your Honor, a person who had high

20  membership credentials.  He posted multiple posts on the forum.

21  He was on there for five years.  He compromised data.  His

22  participation in the in-fraud community was substantial.  And

23  he received a sentence of 96 months and, again, the Government

24  is seeking a sentence of some three years to four years over

25  Mr. Torteya and I don't see, quite frankly, how this

───── 2:17-cr-00306-JCM-VCF ─────

1    defendant's culpability is -- is any worse than -- than that

2    defendant's.

3          Another defendant is Edgar Rojas, your Honor.

4          I've laid that out in my sentencing position these

5    four other defendants that were sentenced and their relative

6    roles.

7          And, you know, I'm mindful of the posts that defendant

8    participated in in the conspiracy.  I'm mindful of his

9    participation in creating a software that was involved in a

10   malware that was -- that did serious damage to -- to many

11   victims.  And I am aware that he did not present his electronic

12   data in the condition that the Government wanted to, that he

13   cleaned the data on it.  And that's appropriately calculated

14   with the obstruction of justice.

15         But in light of all of the facts in the case, your

16   Honor, you know, I'd ask you to emphasize the lack of criminal

17   history.

18         And another factor, your Honor, you know, he does have

19   a wife and a young family.  His wife wrote a letter to the

20   Court and I'm sure your Honor read it.  The letter did speak to

21   the impact that this incident and this episode and the arrest

22   had on Mr. Chiochiu.  I know you read it, your Honor, but I do

23   want to emphasize the -- the tone of her -- of her words.  And

24   I have it here in front of me.  Well, he just -- she just

25   speaks to how he has worked since the incident, he works in

1  a -- in a job in a factory, he works to support his young

2  child.

3          A sentence of -- in the range of where the Government

4  is requesting takes him away from that child for approximately

5  10 years.  I believe, respectfully, that your Honor needs to

6  impose a sentence -- a reasonable sentence but one that is no

7  greater than necessary to achieve the purposes of sentencing in

8  this case.

9          And the PSR, on page 92 -- from paragraph 92 explains

10 Mr. Chiochiu's -- the impact on him.  When the probation

11 officer asked him his plans, Mr. Chiochiu said he would like to

12 continue his education so that he may further his career as a

13 software engineer, expand his family, and live a law-abiding

14 lifestyle.  And I know there's a significant period of

15 probation that will be imposed.  There will be monitors in --

16 in place to make sure that he maintains a law-abiding

17 lifestyle, but that's his -- his goals, your Honor.

18         And -- and his wife said that he became a more loving,

19 caring, supportive individual and is helpful with their

20 daughter and enjoys spending time with her.  He takes her to

21 school.  His wife would be here today, but his wife took his

22 daughter to -- to -- took their daughter to school.

23         And I -- I do want to emphasize that, you know, both

24 him and his wife are working.  His wife works a night shift.

25 He works in a -- in a factory, you know, a labor job.  You

—— 2:17-cr-00306-JCM-VCF ——

1  know, he punches the clock every day.  So I'm asking those

2  factors to be included in the nature and circumstances of the

3  defendant, that he has turned his life around, that there has

4  been three years since his offense in the case.  He's been on

5  an ankle bracelet for three years.  He's been --

6          (Technical difficulties.)

7          THE COURT:  We lost you again.  I don't know if you

8  can hear us, but we lost you again.

9          Can you hear me?

10         MR. EISNER:  Yeah, I can hear you.  Are you there?

11         THE COURT:  We can now.  You're saying he's been on

12 the ankle bracelet for three years and --

13         MR. EISNER:  Yeah, he has been on his ankle bracelet

14 for three years.

15         You know, as a final point, I would ask, respectfully,

16 that he be able to self-surrender to the institution that he's

17 designated to.  I'm hoping the Government would permit that, as

18 well.

19         (Technical difficulties.)

20         THE COURT:  We lost you again.  Can you hear me?  We

21 lost you.  We really lost him now.  The screen just went dark.

22         Now he's back.

23         THE COURTROOM ADMINISTRATOR:  You have it on mute,

24 Mr. Eisner.

25         THE COURT:  I'm sorry.  Do we have him?

—————— 2:17-cr-00306-JCM-VCF ——————

1          THE COURTROOM ADMINISTRATOR:  We do, your Honor, but

2    he's on mute.

3          MR. EISNER:  Yeah, I'm back.

4          THE COURT:  You say you wanted him to be able to

5    self-surrender, I believe.

6          MR. EISNER:  Yes, I did.  You know, I'll finish up

7    here, your Honor, and let Mr. Chiochiu have a couple of words.

8          I do want to emphasize that the sentence that

9    defendant is requesting, six years, is a substantial sentence.

10   We believe that a sentence greater than that or substantially

11   greater than that is more than necessary to achieve the goals

12   of sentencing in this case considering the nature and factor of

13   his --

14          (Technical difficulties.)

15          (Court and courtroom administrator conferring.)

16          MR. EISNER:  If I'm back here, I'd like Mr. Chiochiu

17   to say some words.

18          THE DEFENDANT:  I would like to welcome my deepest

19   apologies for poor judgment in the helping strangers on the

20   internet.  This poor judgment obviously is bad circumstances

21   for me.  I -- I was always trying to improve myself and leave

22   all this bad life behind.  And I would like to promise the

23   Court that I will never -- I will always be a good citizen.

24   And, yeah, I -- again, I would like to apologize that all my

25   posts and helping people to do bad things.

——— 2:17-cr-00306-JCM-VCF ———

1      MR. EISNER:  Were you able to hear that, your Honor?

2      THE COURT:  Yes, sir.  We got that.  Thank you.

3      All right.  Having heard statements of counsel for the

4  Government, counsel for the defendant, and the defendant's

5  remarks, having read the presentence report submitted by the

6  probation department, considering its contents and the contents

7  of the binding plea agreement, the Court hereby accepts the

8  terms of the binding plea agreement and will embody those terms

9  in the sentence provided.

10      Of course, overriding everything are the factors set

11  forth in 18 USC 3553(a) which the Court always considers when

12  determining an appropriate sentence.

13      The sentencing guidelines have been around for, I

14  think, going back to 1984.  It hard to believe it's been that

15  long, but going back to 1984.  And the whole purpose behind

16  them was to end the disparity in sentencing.  And the thought

17  was if you rob a bank in New York, you shouldn't get a

18  different sentence than somebody who robs a bank in Los

19  Angeles, but that kind of disparity.  So for the same crime or

20  similar crime, the sentences should be somewhat equal.  And I

21  always try to apply that to prevent a disparity in sentencing.

22      So the other -- Mr. Medvedev got 120 months, which was

23  10 years, and I think that's an appropriate sentence for you.

24  Again, you and he were the two masterminds, if you will, behind

25  this.  And I think that your sentences should reflect that.

1        So you're hereby committed to a sentence of 120 months

2   which is not -- not greater than necessary to reflect the

3   seriousness of the crime, promote respect for the law, provide

4   just punishment, and provide adequate deterrence but still give

5   you a chance to prove that you really have turned over a new

6   leaf.  The sentence is sufficient but not greater than

7   necessary to achieve the purposes of sentencing in 18 USC

8   Section 3553(a) and, specifically, to avoid sentencing

9   disparities when considering the defendant's role in the

10  conspiracy.

11       A mandatory penalty assessment of $100 is required by

12  statute and due immediately.

13       The number of victims in this case is so large as to

14  make restitution impracticable.  The defendant is fined

15  $568 million in lieu of restitution jointly and severally with

16  his codefendants, payable immediately.  Any unpaid balance

17  shall be paid at a monthly rate of not less than 10 percent of

18  any income earned during incarceration and/or gross income

19  while on supervision subject to adjustment by the Court based

20  upon ability to pay.

21       (Technical difficulties.)

22       MR. MCHENRY:  I apologize, your Honor.  It looks like

23  we lost Mr. Eisner again.

24       THE COURTROOM ADMINISTRATOR:  Judge, I gave him the

25  telephone number to call in if he has any problems.  It looks

—2:17-cr-00306-JCM-VCF—

1   like he's joining again.

2          THE COURT:  All right.  Thank you.  Thanks for

3   pointing that out to me.

4          Are you back?

5          MR. EISNER:  We're here, your Honor.  You know, I have

6   the phone number and the access code.  If that happens again,

7   I'm going to call in.  So let's try to proceed.  I sincerely

8   apologize for this.

9          THE COURT:  It's not -- you don't need to apologize.

10  Not your fault.  It's -- this is part of the -- when we try to

11  do this remotely.

12         Now, I imposed a mandatory penalty assessment of $100.

13  Did you hear me do that?

14         MR. EISNER:  Yes, I did.

15         THE COURT:  So restitution is impracticable.  Did you

16  hear me say that?

17         MR. EISNER:  No.

18         THE COURT:  The Court finds that the number of victims

19  in this case is so large as to make restitution impracticable.

20  The defendant is fined $568 million in lieu of restitution

21  jointly and severally with his codefendants payable

22  immediately.  Any unpaid balance shall be paid at a monthly

23  rate of not less than 10 percent of any income earned during

24  incarceration and/or gross income while on supervision subject

25  to adjustment by the Court based upon ability to pay.

─────2:17-cr-00306-JCM-VCF─────

1          Supervised release is imposed for a term of three

2     years.  While on supervised release, the defendant shall comply

3     with the standard conditions of supervision recommended by the

4     Sentencing Commission and the following mandatory conditions

5     required by statute:

6          1.  You must not commit another federal, state, or

7     local crime.

8          2.  You must not unlawfully possess a controlled

9     substance.

10         3.  Ordinarily, it would be drug -- drug prohibition,

11    unlawful -- to prohibit unlawful drugs, but the Court grants

12    suspension of mandatory drug testing based upon your low risk

13    of future drug use.

14         So then number 3 will be:  You must cooperate in the

15    collection of DNA as directed by the probation officer.

16         In addition, the following special conditions are

17    imposed:

18         1.  Deportation Compliance.  If you are ordered

19    deported from the United States, you must remain outside the

20    United States unless legally authorized to re-enter.  If you

21    re-enter the United States, you must report to the nearest

22    probation office within 72 hours after you return.

23         2.  Access to Financial Information.  You must provide

24    the probation officer access to any requested financial

25    information and authorize the release of any financial

1  information.  The probation office will share financial

2  information with the U.S. Attorney's Office.

3         3.  Debt Obligations.  You must not incur new credit

4  charges or open additional lines of credit without the approval

5  of the probation officer.

6         4.  No contact.  You must not communicate or otherwise

7  interact with your codefendants either directly or through

8  someone else without first obtaining the permission of the

9  probation office.

10         5.  Search and Seizure.  You must submit your person,

11  property, house, residence, office, vehicle, papers, computers

12  (as defined in 18 U.S.C. Section 1030(e)(1)), other electronic

13  communications or data storage devices or media to a search

14  conducted by a United States probation officer.  Failure to

15  submit to a search may be grounds for revocation of release.

16  You must warn any other occupants that the premises may be

17  subject to searches pursuant to this condition.

18         The probation officer may conduct a search under this

19  condition only when reasonable suspicion exists that you have

20  violated a condition of supervision and that the areas to be

21  searched contain evidence of this violation.  Any search must

22  be conducted at a reasonable time and in a reasonable manner.

23         6.  Computer Monitoring.  You must allow the probation

24  officer to install computer monitoring software on any computer

25  (as defined in 18 USC Section 1030(e)(1)) that you use.

————— 2:17-cr-00306-JCM-VCF —————

1          7.  Computer Search Monitoring Software.  To ensure

2    compliance with the computer monitoring condition, you must

3    allow the probation office to conduct periodic unannounced

4    searches of any computers (as defined in 18 USC

5    Section 1030(e)(1)) subject to computer monitoring.  These

6    searches shall be conducted for the purposes of determining

7    whether the computer contains any prohibited data prior to

8    installation of the monitoring software, to determine whether

9    the monitoring software is functioning effectively after its

10   installation, and to determine whether there have been attempts

11   to circumvent the monitoring software after its installation.

12          You must warn any other people who use these computers

13   that the computers may be subject to searches pursuant to this

14   condition.

15          In order to maintain consistency across the breadth of

16   the defendants in this case, I'm going to include the financial

17   penalty condition, which probation did not have it, but I

18   believe it necessary for all the defendants in this case to

19   have that.

20          8.  Financial Penalty.  If the judgment imposes a

21   financial penalty, you must pay the financial penalty in

22   accordance with the schedule of payments sheet of this

23   judgment.  You must also notify the Court of any changes in

24   economic circumstances that might affect your ability to pay

25   this financial penalty.

2:17-cr-00306-JCM-VCF

1          All right.  Ms. Cravotta, can you give -- make sure

2   that the defendant's attorney, Mr. Eisner, gets a copy of these

3   conditions and he may forward them to the defendant so that the

4   defendant may study them as he sees fit?

5          MS. CRAVOTTA:  Yes, your Honor.

6          THE COURT:  And then somebody was saying something.

7   Did I cut somebody off?

8          MR. EISNER:  No, your Honor.  I dialed in, but I think

9   we're going to forge through with the Zoom connection, although

10  it's a little unstable, but we've -- we've gotten that the

11  financial penalty must be imposed to be consistent with all

12  defendants.  We heard that.

13         THE COURT:  All right.  All right.  Now, Mr. Chiochiu,

14  in your plea agreement, you waived your rights to appeal your

15  conviction and sentence.  Nevertheless, there may be certain

16  appellate rights that cannot be waived.

17         If you desire to appeal your conviction and sentence,

18  you must file notice of appeal with this Court within 14 days

19  from today's date.  In the event you cannot afford to pay the

20  costs on appeal, you may request permission to proceed in forma

21  pauperis.

22         If you require the services of an attorney to assist

23  on the appeal and cannot afford to pay an attorney, one will be

24  appointed to represent you at no cost to yourself.  And if you

25  require any transcripts of any proceedings in order to

——— 2:17-cr-00306-JCM-VCF ———

1  prosecute your appeal and cannot afford to pay for those

2  transcripts, they also will be provided at Government expense.

3          Do you understand all of that?

4          THE DEFENDANT:  Thank you, your Honor.

5          THE COURT:  Do you understand all of that?

6          THE DEFENDANT:  Yes, your Honor.  I understand.  Thank

7  you.

8          THE COURT:  All right.  Now, we need a self-surrender

9  date.

10          THE COURTROOM ADMINISTRATOR:  Yes, your Honor.

11          MR. EISNER:  Your Honor, it will take the BOP, you

12  know, several weeks.  Can we have it two months from today?

13          THE COURT:  You're such an optimist, Mr. Eisner.  It's

14  going to take them -- it's going to take, like, 70 days --

15          MR. EISNER:  Oh, okay.

16          THE COURT:  -- for them to designate.  I just -- based

17  on my experience, it's going to be something like that.

18          But anyway, we're just going to explain that the --

19  within about 70 or 75 days, you'll get a letter in the mail

20  from the Bureau of Prisons designating -- telling you the

21  facility to which you've been designated.  And it's your

22  responsibility to be at that facility on the date I'm going to

23  give you by 2:00 in the afternoon.

24          Do you understand, Mr. Chiochiu?

25          THE DEFENDANT:  Yes, your Honor.  I understand.

—— 2:17-cr-00306-JCM-VCF ——

1          THE COURT:  All right.  What would the date be?

2          THE COURTROOM ADMINISTRATOR:  Yes, your Honor.  The

3     date will be Friday, February 18, 2022.

4          THE COURT:  Friday, February 18, 2022 at 2:00 in the

5     afternoon.

6          So you'll get a letter telling you the facility to

7     which you've been designated.  It's your responsibility to be

8     there before 2:00 on Friday, February 18th.

9          Do you understand?

10          (Technical difficulties.)

11          THE COURT:  Can you hear me now?

12          MR. EISNER:  I can, yes.

13          THE DEFENDANT:  We can.  Yes, your Honor.  I

14     understand.

15          THE COURT:  So Friday, February 18, 2022, 2:00 in the

16     afternoon, you'll have to be at that facility by that time.

17          Do you understand?  2:00 in the afternoon?

18          THE DEFENDANT:  Yes, sir.

19          THE COURT:  So it's not that you got to be there at

20     6:00 a.m., but be there 10 or 15 minutes early because you

21     don't want -- you don't want to start off your incarceration

22     when they think that you've absconded just because you're five

23     minutes late.  So it's -- so be there before -- just before

24     2:00.

25          Do you understand?

2:17-cr-00306-JCM-VCF

1          (Technical difficulties.)

2          THE COURT:  Now, do you want -- do you want me to

3   request a -- or to suggest to the Bureau of Prisons a

4   destination for you?

5          MR. EISNER:  In the Southern California area.  That's

6   where his wife and child are.  Thank you.

7          THE COURT:  I know that from reviewing the file so I'm

8   glad to make that recommendation.  Understand that both prisons

9   are crowded so I don't know if they can -- that the Bureau of

10  Prisons will be able to honor that, but I hope they'll be able

11  to honor it for you.

12         So number one would be anywhere in Southern

13  California.

14         Any other destination -- a secondary one?

15         MR. EISNER:  You know -- or in California.

16         THE COURT:  Okay.  Preferably Southern California,

17  number one.  Number two, anywhere in California then.

18         (Technical difficulties.)

19         THE COURT:  All right.  Anything else to come before

20  the Court?

21         MR. MCHENRY:  Nothing from the Government, your Honor.

22  Thank you.

23         THE COURT:  All right.  Anything from the defense?

24         (Technical difficulties.)

25         THE COURT:  Did we lose them again?

1          THE COURTROOM ADMINISTRATOR:  It froze, your Honor.

2          THE COURT:  Let's be at ease just a moment, see if we

3   can get them back.

4          MR. EISNER:  The last we heard, your Honor, was

5   "Anything from the defense," and there isn't.

6          THE COURT:  All right.  So my recommendation to the

7   Bureau of Prisons is going to be Southern California, number

8   one; number two, any place in the State of California, number

9   two.  Let me say that again.  Make it clear.

10         Number one recommendation, anywhere in Southern

11  California.

12         Number two, anywhere in California.

13         Correct?

14         MR. EISNER:  Yes.  Thank you.

15         THE COURT:  All right.  We'll be in recess then.

16         (The proceedings concluded 10:53 a.m.)

17                            *  *  *

18

19

20

21

22

23

24

25

───────────2:17-cr-00306-JCM-VCF───────────

1                        --o0o--

2              COURT REPORTER'S CERTIFICATE

3

4       I, SAMANTHA N. MCNETT, Official Court Reporter, United

5  States District Court, District of Nevada, Las Vegas, Nevada

6  certify that the foregoing is a correct transcript from the

7  record of proceedings in the above-entitled matter to the best

8  of my abilities.

9

10  Date:  August 1, 2022

11

12                              /s/ Samantha N. McNett
                                Samantha McNett, RPR, CRR, CCR
13

14

15

16

17

18

19

20

21

22

23

24

25