UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00306-JCM-MDC-12 |
|---|---|
| Plaintiff(s), | **ORDER** |
| v. | |
| VALERIAN CHIOCHIU, | |
| Defendant(s). | |

Presently before the court is petitioner Valerian Chiochiu's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (ECF No. 1084). The government did not file a response. For the reasons set forth below, the court denies Chiochiu's motion.

**I.    Background**

In 2020, Chiochiu pled guilty to racketeering conspiracy and admitted to being a member of the Infraud Organization, a "criminal enterprise" that enriched its members through "identify theft and financial fraud." (ECF No. 730; ECF No. 737, at 5). He entered into a binding plea agreement with the government, which contained the following factual admissions. (ECF No. 737).

Chiochiu was a member of the Infraud Organization from approximately 2012 to 2018. (*Id.* at 11). He "advised" other members on creating and using malware[1] to illegally harvest credit card account numbers, along with other sensitive information, for financial gain. (*Id.*). He also authored his own strain of malware, dubbed "FastPOS," and "facilitated the use by Infraud organization members" of that malware. (*Id.*). Through his activities with Infraud, Chiochiu enriched himself to the tune of over a million dollars. (*Id.* at 11–12). But the *total* loss attributable to all the defendants involved in the conspiracy is 568 million dollars. (*Id.* at 13).

Chiohiu eventually turned himself in after reaching a self-surrender agreement with the government. (*Id.* at 12). The government also required him to turn over the digital devices used

---

[1] "Malware" is a portmanteau of "malicious software."

James C. Mahan
U.S. District Judge

in connection with the offense. (*Id.*). But before doing so, Chiochiu factory reset his iPhone and destroyed all incriminating evidence on his hard drives, intentionally leaving only innocuous data intact such as family photos and personal documents. (*Id.*). The government was unable to forensically recover any of the deleted data and accordingly did not recommend a 3-level guideline reduction at sentencing for acceptance of responsibility. (*Id.*; ECF No. 798).

The parties' binding plea agreement stipulates a maximum sentence of 132 months incarceration, calculates a total offense level of 43, and contains a waiver of the right to collaterally challenge Chiochiu's sentence. (*See generally* ECF No. 737). The waiver states in part:

> The defendant knowingly and expressly waives all collateral challenges, including any claims under 28 U.S.C. § 2255, to his conviction, sentence, and the procedure by which the Court adjudicated guilt and imposed sentence, except non-waivable claims of ineffective assistance of counsel. The defendant reserves only the right to appeal any portion of the sentence that is an upward departure from the sentencing guideline range determined by the Court.

(ECF No. 737, at 26).

On November 17, 2021, this court accepted the parties' binding plea agreement and sentenced the defendant to 120 months incarceration—a custodial sentence shorter than that contemplated by the parties. (ECF No. 990). Chiochiu now petitions the court to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 for ineffective assistance of counsel and asks for an evidentiary hearing.

**II.    Petitioner's claims against his former counsel.**

Chiohiu makes several claims against his former counsel. First, he claims that his former counsel did not inform him of the potential consequences of wiping incriminating evidence from his digital devices before turning them over to the government. (ECF No.1084-3, at 17–18). He maintains that he was only "later" informed of his right against self-incrimination and the potential benefits of cooperating with the government. (*Id.* at 18). Chiochiu argues that—had he been better informed—he would not have forensically wiped his hard drives and phone. (*Id.*).

Second, his former counsel did not produce an expert witness at sentencing to testify that Chiochiu had posted only pseudocode of his malware, FastPOS, to the Infraud forum. (*Id.* at 19). He argues that because pseudocode is not operative code, no member of Infraud actually used his FastPOS malware for financial gain. (*Id.*). This, he argues, should have been a mitigating factor in reducing his sentence. (*Id.*).

Third, his former counsel did not argue against the 30-level enhancement applied to his offense-level calculation. (*Id.* at 20–21). Chiochiu claims that his former counsel was interrupted by technical glitches and never finished the argument during sentencing (Chiochiu appeared remotely after waiving his right to appear in person). (*Id.*; ECF No. 986). The 30-level enhancement was applied because the charged offense involved a total loss of more than 550 million dollars. *See* U.S.S.G. § 2B1.1(b)(1)(P). Chiochiu maintains that this enhancement was not justified given that he *personally* gained only $1,058,812 from the conspiracy. (*Id.* at 20).

Finally, he claims that his former counsel made no objections to the pre-sentence report authored by the probation department, despite the report containing factual errors. (*Id.* at 22–23). Chiochiu argues that his former counsel gave him incorrect information by stating that he could not object to facts in the PSR which formed the basis of his plea agreement. (*Id.*). He also claims that his former counsel did not explain to him the ramifications of not submitting objections to the PSR. (*Id.*).

**III.   Whether the petitioner waived his right to collaterally attack his sentence.**

Chiochiu entered into a binding plea agreement with the government. The plea agreement contained a waiver of his right to challenge his sentence under Section 2255. Chiochiu does not inform the court of any reason to invalidate his waiver.[2] (*See generally* ECF No. 1084-3). None of the claims against his former counsel relate to the validity of the plea agreement itself. The question before the court is thus whether he waived his right to challenge his sentence based on his former counsel's ineffective assistance during sentencing proceedings. The court finds that he did.

---

[2] Chiochiu's declaration that his former counsel failed to adequately inform him of certain constitutional rights relates to his agreement for self-surrender, not to the plea agreement containing the waiver. (ECF No. 1084-1).

James C. Mahan
U.S. District Judge

- 3 -

Federal prisoners may petition the court "to vacate, set aside or correct [their] sentence" if the court imposed the sentence "in violation of the Constitution or laws of the United States...." 28 U.S.C. § 2255(a). Petitioners may challenge their sentence by claiming ineffective assistance of counsel on a Section 2255 motion. *United States v. Jackson*, 21 F.4th 1205, 1212 (9th Cir. 2022).

But a defendant may waive his right to collaterally challenge his sentence under Section 2255. *See United States v. Abarca*, 985 F.2d 1012, 1013–14 (9th Cir.1993). Such a waiver is enforceable if "(1) the language of the waiver encompasses the defendant's right to [challenge] on the grounds raised, and (2) the waiver is knowingly and voluntarily made." *United States v. Rodriguez*, 49 F.4th 1205, 1212 (9th Cir. 2022) (cleaned up) (citations omitted). The court assesses the knowing and voluntary nature of the waiver by "assessing the knowing and voluntary nature of the plea agreement as a whole." *Id.*

Because waivers must be knowing and voluntary, it follows that a defendant cannot waive a claim that ineffective counsel rendered the waiver *itself* invalid. *See Rodrguez*, 49 F.4th at 1212.[3] However, claims based on ineffective assistance of counsel that do not relate to the validity of the waiver itself *are* waivable. *See United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994).[4]

Plea agreements are contractual in nature, courts generally interpret them based on contract principles, and "their plain language will generally be enforced if the agreement is clear and unambiguous on its face." *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir.2005) (overruled on other grounds). "The government, as the drafter of [the] plea agreement, is

---

[3] The Ninth Circuit held that a plea agreement could not waive the defendant's claim that his counsel dissuaded him from withdrawing his plea and failed to inform him of the likely immigration consequences of his plea. *Rodrguez*, 49 F.4th at 1212.

[4] In dicta, the Ninth Circuit noted that while a plea agreement may not waive ineffective assistance of counsel based on "counsel's unprofessional inducement of the defendant to plead guilty," that was not necessarily true if the defendant's claim related "only to counsel's alleged mishandling of the sentencing proceedings" and not the plea agreement. *Pruitt*, 32 F.3d at 433. Other courts in this circuit have similarly interpreted *Pruitt*. *See generally Macias-Robles v. United States*, No. 06:CV-1344-JM, 2008 WL 1886038, at *3 (S.D. Cal. Apr. 25, 2008); *Kinney v. United States*, No. CR:10-796-PHX-NVW, 2014 WL 2890113, at *5 (D. Ariz. Feb. 7, 2014), report and recommendation adopted, No. CR-11-00491-PHX-NVW, 2014 WL 2895429 (D. Ariz. June 26, 2014).

James C. Mahan
U.S. District Judge

- 4 -

responsible for any lack of clarity such that ambiguities are construed in favor of the defendant." *Davies v. Benov*, 856 F.3d 1243, 1247 (9th Cir. 2017) (citations omitted).

By the plain language of the plea agreement, Chiochiu waived his right to challenge "the procedure by which the Court…imposed sentence." (*Id.*). Although Chiochiu reserved the right to challenge his sentence based on ineffective assistance of counsel, this reservation was limited only to "non-waivable" claims. As this court explained earlier, a claim for ineffective assistance of counsel *as to sentencing proceedings* is waivable. Chiochiu therefore clearly and unambiguously waived his right to collaterally attack his sentence for this reason, and the court must deny his motion.

### III. The merits of petitioner's petition.

Even had Chiochiu not waived his right to collaterally attack his sentence, his motion still fails on the merits. To prevail on a claim of ineffective assistance of counsel, the petitioner must show that his counsel's performance was deficient *and* that he was prejudiced by that deficiency. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Chiochiu can show neither.

To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance." *Id.* at 690. To show prejudice in the context of sentencing, Chiohiu must demonstrate that there is a "reasonable probability" that he would have received a different sentence, but for counsel's defective assistance. *See Lafler v. Cooper*, 566 U.S. 156, 165 (2012); *see also Daire v. Lattimore*, 812 F.3d 766, 768 (9th Cir. 2016). When analyzing an ineffective-assistance-of-counsel claim, the court "need not address both [prongs] if a defendant makes an insufficient showing under one." *United States v. Figueras*, 2022 WL 414694, at *2 (9th Cir. 2022) (slip op.).

Chiochiu argues that all of his former counsel's defective actions cumulatively prejudiced him at sentencing. But Chiochiu provides nothing to support this contention other than bald, conclusory assertions. Even if his former counsel's actions were deficient—and the court makes no finding that they were—Chiochiu has not demonstrated that his sentencing outcome would have been different.

///

Despite Chiochiu's claims to the contrary, his former counsel *did* argue, at sentencing, against a significant increase to Chiochiu's sentence based on the 30-level enhancement.[5] (Sentencing Tr., ECF No. 1084-4, at 11–13). The same argument was also made—and considered by the court—in Chiochiu's sentencing memorandum filed before his sentencing hearing. (ECF No. 889). Likewise, Chiochiu's former counsel argued against the government's claim that Chiochiu obstructed justice by digitally wiping his devices before self-surrendering, and pointed out that Chiochiu was under no obligation to self-surrender. (*Id.* at 7). All of this was considered by the court before it rendered Chiohiu's sentence.

Chiochiu's remaining ineffective assistance claims are similarly meritless. The PSR states that Chiochiu "facilitated" other Infraud members' use of his FastPOS malware. Chiochiu argues that, because he shared only *pseudocode* of FastPOS to other members, he did not *actually* facilitate any Infraud member's use of FastPOS. (ECF No. 1084-3, at 19–22). According to Chiochiu, "pseudocode" is generic, unworkable, inoperative code. (*Id.* at 19). His former counsel should have produced expert testimony on this matter and objected to the PSR on this basis. (*Id.*).

What Chiochiu fails to explain, perhaps intentionally, is that—though inoperative on its own—pseudocode can be used to implement *real* code. Athul K. Acharya, *Abstraction in Software Patents (and How to Fix It)*, 18 J. MARSHALL REV. INTELL. PROP. L. 364, 378 (2019) ("Pseudocode…conveys just enough detail to enable a programmer to implement the algorithm in *real* code.").[6] Pseudocode can be analogized to a blueprint for computer programmers to create software using their preferred coding language. In other words, though Chiochiu did not provide Infraud members with a file of FastPOS, he gave them instructions for writing their own version of FastPOS.

///

---

[5] Any technical glitches were short-lived and occurred toward the end of counsel's argument. (*Id.*).

[6] The article goes on to explain that though pseudocode "cannot be compiled or executed on any machine," it "describes to programmers the way—the specific, concrete way—that the…[software] algorithm works."

Chiochiu overlooks another critical point: the factual statements contained in the PSR mirror almost exactly Chiochiu's factual admission in support of his plea. He admitted in his plea agreement that he "facilitated" the use of FastPOS by Infraud members. Based on his own admissions, therefore, the PSR was not factually inaccurate. Any objection to that effect would have been overruled by this court and expert testimony would not have changed the outcome of his sentence.

**III. Whether the petitioner is entitled to an evidentiary hearing on his motion.**

When the petitioner requests an evidentiary hearing for his Section 2255 motion, one must be "promptly" granted "unless [his] allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). In other words, "a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal invalidity of the petitioner's claims." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

Chiochiu is not entitled to a hearing on his Section 2255 motion because the record has "affirmatively manifested the…legal invalidity" of his claim. The court would go so far as to find his claims "patently frivolous." Chiochiu not only waived his right to collaterally attack his sentence, but his claims are unsuccessful even on the merits. The court therefore denies his request for an evidentiary hearing.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Chiochiu's motion to vacate, set aside, or correct his sentence under 28 U.S.C. 2255 (ECF No. 1084) be, and the same hereby is, DENIED.

DATED January 24, 2024.

_____
UNITED STATES DISTRICT JUDGE

James C. Mahan
U.S. District Judge